In re James R. McELROY, Debtor.

Bankruptcy No. 96–50742.

United States Bankruptcy Court,
E.D. Texas,
Texarkana Division.

April 30, 1999.

J. Powers Branch, Longview, TX, for debtor.

Bill F. Payne, Moore, Payne, Clem, Rodgers & Hodgkiss, Paris, TX, for First National Bank of Sulpher Springs.

## OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court is the Complaint To Compel Turnover Of Property Under 11 U.S.C. § 542 filed by the Debtor, James R. McElroy. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr.Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

James Robert McElroy (the "Debtor"), initiated the within bankruptcy proceeding by filing a petition for relief under Chapter 12 of Title 11 of the U.S. Code. Previously, over several years, the Debtor had executed numerous promissory notes and security agreements to the benefit of First National Bank of Sulpher Springs ("the Bank") secured by both real and personal property.[1] The Debtor also entered into a relationship with the Bank in which the Bank held certain funds in an account called the "cull cattle" account. Very little detail describing this account was provided to this Court and no documents substantiating the terms of the business relationship or the amounts in this account were submitted into evidence. The evidence indicates that the account is used to deposit funds from the sale of non-producing, or cull cattle, from the dairy herd. The funds are then used to purchase replacement cattle. At a minimum, the parties agree that, at the time of the filing of the Complaint To Compel Turnover Of Property Under 11 U.S.C. § 542, either $33,344 or $39,344 was on deposit with the Bank in the account. The account has been referred to by the parties both as an escrow account and an "impound" account. At some point prepetition, the amounts on deposit at the Bank, were pledged in a loan transaction to refinance a promissory

---

1. The Bank filed a secured claim against the estate in the amount of $606,222.45. According to the Ch. 12 Trustee's Final Report and Application for Closing, the Bank was paid $78,332.14 on its secured claim and $677.00 on its priority claim.

note secured by real property. The Bank "froze" the account pre-petition.[2] These funds are the subject of the dispute before the Court (the "Funds").

The Debtor, pursuant to the Complaint, asserts that the Funds are property of the estate to which the Bank had no right pre- or post- petition. The Bank claims to have a superior interest and security interest in the Funds on deposit, or, alternatively, that the Funds were subject to offset.[3] The Bank further asserted that the Debtor had consented to, and the Court authorized, a post-petition lien on the escrow account or Funds (the "Replacement Lien"). In fact, promptly following the Debtor's filing of his petition, he moved the Court to allow the use of certain cash collateral of the Bank. The Debtor and the Bank entered into the Stipulation and Agreement On Debtor's Motion For Approval To Use Cash Collateral which was approved by the Court. Thereafter, a plan of reorganization was confirmed but the Debtor defaulted under the terms of the confirmed plan and the case was converted to a case under Chapter 7. The adversary matter came before the Court pursuant to regular setting and was taken under advisement following argument to permit the Court's review of the various loan documents.[4]

## DISCUSSION

11 U.S.C. § 542(a) provides that " . . . an entity other than a custodian, in possession, custody or control, during the case, of property that the trustee may use sell or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." The Debtor believes that turnover is appropriate because the Funds are property of the estate and that even if the Bank once had a right to the Funds, it lost that right as a result of the plan confirmation.

The Court has considered the evidence, argument of counsel and the record in this case. The Court finds that the language of the Stipulation And Agreement On Debtor's Motion For Approval To Use Cash Collateral is unequivocal. Paragraph 2(d) sets forth as follows: "Bank is to retain all existing liens and have a replacement lien on hay, offspring, and such custodial funds as may be determined to be the property of the Debtor by this Court to the extent that Bank's cash collateral has been used by the Debtor under this stipulation, and Debtor shall promptly reimburse Bank for such cash collateral used from any such custodial funds which may be awarded him." "Cash collateral" is defined under Title 11 of the Bankruptcy Code. Neither party disputes that the Funds in dispute were and remain in the care and control, hence, the custody, of the Bank. As such they constitute "custodial funds" and were controlled by the Stipulation Agreement as of the time this Court's

2. The Funds were not listed on the Debtor's Ch. 12 Schedules filed with this Court and no setoff was reflected there. A civil suit involving the Bank appears in Debtor's Statement of Financial Affairs. Unsecured debt to the First National Bank of Hughes Springs appears in the amount of $30,000. The Debtor's Ch. 7 Schedules also does not include reference to the Funds.

3. Several promissory notes executed by the Debtor to the benefit of the Bank include broad, non-specific set-off provisions. Their legitimacy and applicability need not be addressed by this Court. No certified copies of documents were admitted into evidence. Poor quality copies of the alleged UCC filings are in the Court's record. At least one pre-petition filing specifically excludes accounts from the collateral list.

4. The First National Bank of Hughes Springs intervened, then later withdrew from the adversary proceeding. Neither the Chapter 12 Trustee nor the Chapter 7 Trustee have intervened.

order approving it became final and non-appealable. This Court is of the opinion that, regardless of the terms of the loan documents, the Court's order approving the Stipulation Agreement granted the Bank a replacement lien on the Funds. The extent of the lien was defined by the Stipulation Agreement as confirmed by the Debtor's admissions.

Pursuant to the Debtor's Fourth Amended Chapter 12 Plan (the "Plan"), which was admitted into evidence at the hearing and is also a part of the record, Article II, Section 4(c), "The Bank shall retain it's liens securing its claim until paid in accordance with this plan ... and, also shall receive a replacement lien on additional cattle purchased during the administration of this Plan." Article III, the Plan's Liquidation Analysis, advises claimants and parties that "The cash collateral order entered by the court on June 3, 1996, contains an assignment of this deposit [5] to the extent of cash collateral advanced to Debtor. Advancements exceed $30,000.00 so no amounts are available to unsecured creditors." This information was confirmed at trial by the credible testimony of Mr. Jim Taggert, a witness and a Bank officer. The Debtor substantiated Mr. Taggert's testimony during his own examination, by testifying that the amount of the advances for cattle exceeded $33,000.00 and that the deposit referred to in the Plan consisted of the Funds in dispute.

### CONCLUSION

Therefore, this Court concludes that, the cash collateral order approved by this Court, as agreed to by the parties, gave the Bank a lien on the custodial funds, the Funds which are the subject of this dispute, to secure and in consideration for the Debtor's use of the Bank's cash collateral. The Plan further provided for the Bank's retention of liens and replacement liens. The Debtor admits using the Bank's cash

collateral in excess of the Funds. For the foregoing reasons, this Court finds that the Bank has the superior lien on the Funds in dispute and does not require the Bank to turn the Funds over to the Trustee. An order will be entered accordingly.

### ORDER

Now before the Court for consideration is the Complaint To Compel Turnover Of Property Under 11 U.S.C. § 542 filed by the Debtor, James R. McElroy. The Court considered the pleadings filed, the evidence adduced and the argument of counsel, and for the reasons contained in a written opinion dated contemporaneously herewith, the Court denies the request for turnover of property pursuant to 11 U.S.C. § 542. ACCORDINGLY, it is hereby,

ORDERED, ADJUDGED AND DECREED that the Debtor's request for turnover of property pursuant to 11 U.S.C. § 542 shall be, and hereby is, DENIED; it is further,

ADJUDGED AND DECREED that the funds which are the subject of the Complaint To Compel Turnover on deposit with the First National Bank of Sulpher Springs, all as more particularly described in the Complaint, constitute funds to which the Bank's lien and interest is superior and that such funds are not property of the Debtor or this estate.

---

**5.** The "deposit" is defined in the document as "$130,000" "cash on deposit" "disputed" and "secured" to an extent "unknown".